**CLINICAL PRODUCTS, LIMITED,**
Plaintiff,

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 1931–64.**

United States District Court
District of Columbia.

April 26, 1966.

Arthur E. Dowell, III, Washington, D. C., William A. Drucker, New York City, for plaintiff.

Joseph Schimmel, Sol., U. S. Patent Office, Jack E. Armore, Washington, D. C., of counsel, for defendant.

JACKSON, District Judge.

This is a civil action under 35 U.S.C. § 145 in which plaintiff seeks to obtain a patent on the oral administration of drug resinates formed by adsorption of the well-known drugs pethidine (or meperidine) and methadone on cation exchange resins, whereby the drugs are slowly released from the adsorption compounds upon contact with body fluids in the gastro-intestinal tract, particularly the hydrochloric acid-containing stomach gastric juice and the sodium chloride-containing intestinal juice.

Claim 40 is illustrative of the invention and reads as follows:

40. In a method of orally administering a drug to a human being, wherein the drug is selected from the group consisting of methadone and pethidine, the improvement which comprises orally administering the drug in a unit dose containing a therapeutically effective amount of cross-linked cation exchange resin having the said drug ionically bound to the resin to form an adsorption compound.

Keating U. S. Patent No. 2,990,332 (application filed April 2, 1958) discloses the use of similar drug resinates formed from morphine-type drugs, notably morphine itself, for exactly the same purpose as plaintiff, namely, relieving body pain by slow, sustained release of the free drug from the adsorption compounds while in the gastro-intestinal tract.

The U. S. Dispensatory, 25th Edition (1955), discloses the prior art-recognized equivalence of morphine, pethidine, and methadone as narcotic pain-relievers having both analgesic and addicting properties.

Defendant contends that, in view of the art-recognized equivalence of the three drugs as narcotic analgesics, and the further disclosure in the Dispensatory, a standard encyclopedia of drugs, that methadone "has certain structural resemblances to both morphine and meperidine (pethidine)", it would have been obvious, at the time plaintiff's invention was made, for one having ordinary skill in the drug art to substitute either methadone or meperidine (pethidine) for morphine in the drug resinates (adsorption compounds) of Keating. Based on the facts of this particular case, as determinations of the issue of obviousness must necessarily be based, the Court fully agrees with both defendant's contention and the statement in the Board of Appeals Opinion to the effect that plaintiff has "trodden a well beaten path."

Plaintiff's position in this case is based on a familiar argument, the alleged lack of predictability of claimed chemical subject matter in view of prior art disclosures. This Court recently expressed certain unequivocal views with respect to this argument in Hedman et al. v. Commissioner of Patents, 253 F.Supp. 515 (1966), wherein the rule of "reasonably based predictions" is stressed and reference is made to "the scientific fact that there is indeed a considerable amount of predictability in chemistry," meaning, of course, an amount which is worthy of consideration, as distinguished from an insignificant amount. The Court of Customs and Patent Appeals has held that "obviousness does not require absolute predictability," in a case involving claimed chemical subject matter. In re Moreton, 288 F.2d 940, 943, 48 C.C.P.A. 928 (1961). See also Walker, "Patent Protection Available on New Uses for Old Chemicals," in "Patents for Chemical Inventions," American Chemical Society, Washington, 1964, p. 82 to the effect that "our understanding of the laws of chemistry may change, but the laws of chemistry themselves do not change."

Applying the paramount rule of "reasonably based predictions" to the facts of the instant case, it is first noted that the structural formulas shown in the Dispensatory for the pethidine, methadone, and morphine molecules reveal certain structural features which the three drugs possess in common, e. g., an N-methylated basic nitrogen group separated from a quaternary carbon atom by an ethylene bridge, i. e., a bridge consisting of two other carbon atoms.

As plaintiff's witness Flower stressed at the trial, the formulas for the three prior art drugs also reveal numerous dissimilar structural features, which need not be discussed due to the controlling facts of this case. In this regard, the Court fully appreciates the scientific fact that the various structural components present in the molecular configuration of a chemical compound are usually determinative of its properties, and that this fact is the basis for a significant amount of the predictability

which exists in chemistry. However, it should be emphasized that this is not a case wherein one having merely ordinary skill in the drug art would be required to predict the presence or absence of analgesic properties in pethidine or methadone on the basis of their structural similarities to the structural formula of morphine, which for many years has been known to be a therapeutically useful analgesic. On the contrary, the prior art-recognized equivalence of the three drugs as therapeutically useful narcotic analgesics is fully disclosed in the U. S. Dispensatory, defendant's secondary reference.

Thus the real issue with respect to the obviousness of plaintiff's claimed subject matter is the predictability of adsorption of pethidine and methadone on the acidic cation exchange resins of Keating to form drug resinates, and the predictability of subsequent sustained release of the free drugs at a therapeutically useful rate upon contact of the adsorption compounds with the body fluids of the gastro-intestinal tract. Keating generally discloses that "organic drug compounds containing a basic nitrogen group" are operable in the practice of his invention. This description is applicable to plaintiff's pethidine and methadone as well as to the morphine-type drugs of Keating. The Dispensatory structural formulas for plaintiff's two drugs show that both, like morphine, possess a single functional N-methylated basic nitrogen group per molecule. Therefore, it is considered reasonable to predict that pethidine and methadone, like morphine, will react with the acidic cation exchange resins of Keating to form drug resinates, and that the free drugs, like Keating's morphine-type drugs, will be released from the adsorption compounds at a sustained rate upon subsequent exposure to the gastro-intestinal tract juices. With respect to the sustained release of the free drug, or more correctly, the drug hydrochloride, Keating discloses that the rate of release may be adjusted for various drugs by changing the cross linkage and/or particle size of his cation exchange resins. Such changes as may be necessary for plaintiff's drugs would appear to be matters of routine experimentation, well within the ordinary skill of drug art practitioners, in view of the Keating patent teachings.

Plaintiff's witness Flower also testified at the trial as to the effects of molecular dimensions of various drugs on adsorption and release. For example, most of the drug is adsorbed within the pores or "tunnels" of the cation exchange resins, and only a relatively small amount of drug is adsorbed on the external surface thereof. This is readily understandable, since the surface area within the pores is quite large in comparison with the external surface area of the resin particles, and adsorption is known to be a surface phenomenon. Plaintiff's expert witness also discussed a rather interesting phenomenon which is known as the "purse string" effect because of the analogy to drawing the strings of a purse, thereby reducing the size of the purse opening. It seems that, when certain drugs of large molecular dimensions, such as thiopropazate, are adsorbed within the pores or "tunnels" of cation exchange resins, swelling and subsequent shrinkage in acid media of the resin causes a reduction in size or diameter of the resin particle openings (the initial size of which is controlled by the degree of cross-linkage of the resin) so that the large drug molecules may be entrapped within the resin pores. In other words, the drug molecules, while not too large to enter the resin pores, are too large to exit from the reduced size pore openings of the swelled and shrunk resins, thus effectively destroying the therapeutic utility of the drug, which becomes effective in the body only after release from the cation exchange resin to which it is ionically bound, primarily within the resin pores.

The evidence and argument as to the "purse string" effect, while theoretically interesting, is considered of little value

according to the facts of this case. Pethidine and methadone have *smaller* molecular dimensions than that of morphine, which has a structure consisting of five interlocking rings, in contrast to the simple two ring structures of plaintiff's two drugs. Since the "purse string" effect did not destroy the therapeutic utility of Keating's morphine-type drug resinates for the sustained release of analgesics in the gastro-intestinal tract, it is reasonable to predict that this effect will not interfere with the use of the smaller pethidine and methadone molecules in the same manner, and for the same purpose of relieving body pain. See also Hedman v. Commissioner, supra, 253 F.Supp. 515.

Whether or not it is more desirable to prescribe plaintiff's pethidine or methadone in place of Keating's morphine is a matter of considerable doubt. All three drugs are unquestionably preferable as analgesics to heroin, or diacetylmorphine, which rapidly gives rise to narcotic addiction. However, plaintiff's Exhibit 3 indicates with respect to pethidine that "addiction to this drug is even more undesirable than is addiction to morphine," and further teaches that "the total addiction liability of dl-methadone is probably almost as great as that of morphine." May, "The Chemistry of Drugs of Addiction," American Journal of Medicine, Vol. 14, pp. 540–542, May 1953.

One final interesting aspect of this case that is worthy of mention in connection with plaintiff's argument that the substitution of pethidine and methadone in place of Keating's morphine should be held to be unobvious due to the structural *dissimilarities* between plaintiff's two drugs and morphine is the fact that plaintiff originally disclosed and claimed morphine-type drug resinates, which claims were withdrawn from suit

at the trial, and the *only* working example in the specification relates to morphine resinate. Plaintiff's implicit position in this respect must necessarily be that disclosure of specific working examples in the specification for pethidine resinate and methadone resinate is unnecessary, due to the structural *similarities* between these two drugs and morphine. If there is in fact no predictability as to the therapeutic effect of the resinates of pethidine and methadone in the gastro-intestinal tract, due to the structural *dis*similarities between these two drugs and morphine, then claims to the pethidine and methadone resinates would be unpatentable for lack of adequate supporting disclosure in the specification, which describes only morphine resinate in the sole working example. Thus plaintiff is caught on the horns of a dilemma between the predictability and lack thereof of its claimed chemical subject matter in view of the prior art disclosures. To resolve the problem, the Court would agree with plaintiff that working examples as to the preparation and use of its pethidine and methadone resinates would only unnecessarily lengthen the specification in view of prior knowledge in the drug art, as represented by Keating and the Dispensatory. The Court likewise holds that the claimed subject matter of the application in suit is obvious and unpatentable over Keating in view of the Dispensatory under 35 U.S.C. § 103. Plaintiff is therefore not entitled to a patent on the subject matter claimed in assignors Rety et al's application Serial No. 767,270, filed October 15, 1958 (claiming priority under 35 U.S.C. § 119 of a British application filed September 23, 1958) and entitled "Resin-Drug Compounds." Plaintiff's Complaint should be dismissed.

Pursuant to Rule 52(a), Federal Rules of Civil Procedure, this Opinion contains Findings of Fact and Conclusions of Law.