48 CCPA

**Application of Douglas H. MORETON.**

**Patent Appeal No. 6667.**

United States Court of Customs
and Patent Appeals.
April 14, 1961.

Francis C. Browne, William E. Schuyler, Jr., Andrew B. Beveridge, Joseph A. DeGrandi, Washington, D. C., and Gerald H. Peterson, Santa Monica, Cal., of counsel, for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel and Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of all claims in the application of Douglas H. Moreton, Ser. No. 341,348, filed March 9, 1953, entitled "Tetra (Octyl) Orthosilicate Hydraulic Fluid." The only claims before us are 5 and 12. The sole issue is patentability in view of the following references:

| | | |
|---|---|---|
| Watson | 2,549,270 | Apr. 17, 1951 |
| Morgan | 2,643,263 | June 23, 1953 |
| | | filed Sept. 22, 1950 |
| da Fano | 2,726,213 | Dec. 6, 1955 |
| | | filed Feb. 18, 1950 |

The invention is a fluid lubricant and/or hydraulic fluid suitable for use, for example, in aircraft hydraulic systems over the wide temperature range of −80°F. to 400°F., or even higher. The specification states that fluid for such use

"in addition to having the usual combination of properties making it a good lubricant or hydraulic fluid should also have a relatively low viscosity at extremely low temperatures and an adequately high viscosity at relatively high temperatures and, in addition, must have adequate stability at the high operating temperatures of use. Still further, it is important that such a composition have low volatility and especially have a balanced volatility, that is, an important component should not volatilize away from the composition."

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge*

*O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

Appellant claims to have produced such a fluid by combining with a tetra (octyl) orthosilicate, which is a lubricant fluid, "a suitable polyalkyl methacrylate in which the alkyl groups have a number of carbon atoms within the range of 8 to 14" as a viscosity index improving agent. The only polyalkyl methacrylate exemplified and claimed, however, is, specifically, poly decyl methacrylate (10 carbon atoms) having a molecular weight within the range of 2,000 to 14,000. In the examples and in claim 5 it is stated to have an average molecular weight of 8,500.

Appellant's brief, paraphrasing the specification, states, as being a part of his discovery, that "tetra (octyl) orthosilicates such as * * * tetra 2-ethylhexyl, have a combination of most of the properties suitable for use as a hydraulic fluid * * * except that these orthosilicates are unsatisfactory since *the slope of the viscosity-temperature curve* over the wide temperature range of –80°F. to 400°F. *is too great* [1] and the *viscosity above 210°F. is unsatisfactorily low.*" [Our emphasis.] The remainder of the inventive act is said to reside in the further discovery that addition of the aforesaid poly decyl methacrylate remedies these shortcomings when used in admixture with the orthosilicate in an amount of from 0.2 to 10 per cent of the orthosilicate, the resulting fluid being "ideal."

The appealed claims are directed to fluids composed of the two components, claim 12 being generic to tetra (octyl) orthosilicates and poly decyl methacrylate in the 2,000–14,000 molecular weight range while claim 5 is specific to tetra (2-ethylhexyl) orthosilicate and the same methacrylate with the added limitation that its average molecular weight is 8,500. The question is whether this claimed combination of components "would have been obvious at the time the invention was made to a person having ordinary skill in the art" and assumed to be familiar with the teachings of the references relied on, 35 U.S. C. § 103. We might add, in view of appellant's arguments, that in answering this question we should and do take into account, insofar as the record and our ability enable us to do so, the knowledge one of ordinary skill in the art would have had of the problems and uncertainties in the art so as to avoid the pitfall of hindsight wisdom in passing on the issue of obviousness.

As a starting point, the Morgan patent disclosed—and appellant admits it—the utility of tetra (octyl) orthosilicates, including the specific tetra (2-ethylhexyl) orthosilicate of claim 5, as hydraulic fluid for aircraft and other uses. Appellant, therefore, cannot claim this as a part of his discovery, though his specification appears to do so. If he did discover such utility, so much of the discovery admittedly lacked novelty.

It is argued that Morgan does not recognize that *the slope of the viscosity-temperature curve* over the range –80°F. to 400–500°F. *and the viscosity above 210°F.* are *unsatisfactory,* or suggest

---

1. An explanation in the da Fano reference will make this jargon intelligible:

"Most liquids have the property of becoming viscous or thick when their temperature is lowered, and of becoming thin or less viscous as their temperature is raised. If the temperature-viscosity relationship is plotted on an A.S.T.M. viscosity-temperature chart (D 341–43), with the temperature in degrees F. on the abscissa and the viscosity (expressed in centistokes) on the ordinate, a substantially straight line usually results. The slope of this curve is an indication of the temperature-viscosity relationship. It is apparent that if the viscosity were not changed at all with a change in temperature, the plotted curve would be horizontal or flat. The less the slope of the plotted curve deviates from a flat position, the better is the temperature-viscosity relationship."

This also serves to indicate that the problem on which appellant was working was one with which the art was quite familiar. The use of the word "better" shows that others were in quest of means to reduce the slope of temperature-viscosity curves, as da Fano was.

any agent to improve the matter. The Morgan patent states:

> "The liquids of the present invention are particularly suited for these uses [hydraulic fluids in aircraft, torque transfer devices, fluid transmissions, shock absorbers and as lubricants] because of their fluidity over wide temperature ranges; their resistance to hydrolysis and oxidation; and their lubricity."

As to the specific compound tetra (2-ethylhexyl) orthosilicate, the following disclosure is made by Morgan:

> "Tetra 2-ethylhexyl orthosilicate has a boiling point in the range of 191–192°C. at .9 mm. mercury pressure which is approximately 690°F. at 760 mm. of mercury pressure. Its viscosity at 210°F. approaches 2.36 centistokes, at 100°F. approaches 6.83 centistokes, and at −40°F. approaches 260 centistokes. Its pour point is below −100°F. and no crystallization was noted at the lowest temperatures available using Dry Ice."

Whether or not Morgan states the shortcomings of the viscosity characteristics of this specific material claimed by appellant as one of his components, he made no secret of what those characteristics are and set them forth for all the world to see and to decide whether or not they are satisfactory for any given purpose.

We feel constrained to hold that the prior art possessed quite full knowledge of the use of appellant's orthosilicate component as hydraulic fluid and of its viscosity-temperature behavior. This brings the question of patentability of the claimed invention down to the obviousness of adding to the orthosilicate component the claimed methacrylate component as a viscosity index improving agent, i. e., to decrease the slope of the viscosity-temperature curve over the stated temperature range and to increase the viscosity above 210°F., these being the alleged shortcomings to be remedied in order to achieve a more perfect hydraulic fluid.

Viscosity improving agents likewise were not unknown to the art when this invention was made. da Fano was in search of a hydraulic fluid with a flatter temperature-viscosity curve and discloses that he achieved an increase in flatness by using a mixture of (1) a viscous polymeric material with (2) a non-viscous monomeric material. His monomeric material is an orthosilicate or hydroxysilicate, i. e., a monomeric silicic acid ester. One polymeric material he discloses is "polymerized methyl acrylic acid ester, available as 'Acryloid HF855,'" a 55% solution of "polymerized methyl ester of acrylic acid (also sometimes termed 'polymethyl acrylate' or 'polymerized methyl acrylic acid ester') in 200°F. minimum flash oil." da Fano acknowledges the use of silicoortho-esters as hydraulic fluids as in the prior art but regards them as unsatisfactory because their temperature-viscosity curves are "not low enough." His advance was the combining with them of polymethyl acrylate, in order, among other things, to flatten out the curves. His figures show that he met with some success. Admittedly he does not disclose appellant's specific orthosilicates but rather cresyl tri-isopropyl orthosilicate with a statement that

> "The silicates may be aryl, alkyl or aralkyl orthosilicates in which the radicals may be phenyl, naphthyl, anthracyl, diamylphenyl, xylenyl, cresyl, or methyl, ethyl, propyl, isopropyl, tertiary butyl and mixed aryl and/or alkyl radicals."

The Watson patent is also concerned with hydraulic fluids with an improved viscosity index or flat temperature-viscosity curves and, like da Fano, with hydraulic fluids in admixture with viscosity improving agents. The first thing Watson says is that various phosphate liquids have been suggested as hydraulic fluids, including tricresyl phosphates, which however, "show a low response to viscosity index improvers such as the polymerized methacrylic acid esters."

Next he proposes the use of a particular mixture of "tricresyl phosphates with alkyl phosphates wherein the alkyl groups each have four to eight carbon atoms, the above mixture being improved by the addition of *viscosity index improvers, especially polymerized esters of methacrylic acid,* as more particularly described hereinafter." [Emphasis ours.] After describing in detail his tricresyl and trialkyl phosphates, the specification then includes the following:

"Viscosity Index Improving Agents

"The agents to be used in the present compositions include polymerized esters of the acrylic acid series, such as acrylic acid esters and, *more preferably, methacrylic acid esters.* The latter are readily available as commercial products and are sold under the trade-name "Acryloid." The esters to be used should have *molecular weights from about 5,000 to about 25,000 preferably 5,000 to 15,000.* It will be understood that this is an average figure for the mixture of polymers, which is always present. [Emphasis ours.]

"The acids should be esterified with aliphatic alcohols having two to fifteen carbon atoms, and the polymers may be homopolymers of a single ester or may be copolymers of a mixture of such esters. The term 'polymerized esters' will be understood to include both of these types."

There are two specific examples of hydraulic fluids in each of which "Acryloid HF855," the same material mentioned by da Fano, is included, 4% by weight in one example and 5% by weight in the other. (From the total disclosure we judge we should consider about half of that amount to be kerosene carrier for the polymer.)

It is not clear what "Acryloid HF855" is. Watson's disclosure would indicate it is a methacrylic acid ester polymer while da Fano specifies that it is a polymethyl acrylate. Whatever it is, Watson and da Fano both suggest its use and Watson specifically suggests in addition that methacrylic acid esters of appellant's type are viscosity index improving agents.

It is our view that the board was entirely justified in concluding that "While Watson does not specifically disclose poly decyl methacrylate he does clearly indicate that the esterifying alcohol may have two to fifteen carbon atoms so that the decyl methacrylate would be within the scope of Watson's disclosure." Indeed, we would go further and say that the Watson patent would clearly suggest that the specific poly decyl methacrylate of claim 5 would have utility as a viscosity improving agent, taking into account the fact that that claim names an average molecular weight of 8,500, right in the middle of Watson's disclosed range.

With this much knowledge in the art we are unable to see anything unobvious in using this material to improve the viscosity index or temperature-viscosity curve of the old orthosilicate hydraulic fluids as disclosed by Morgan, by anyone aware of the fact that they needed improving or desirous of improving them.

Appellant bases considerable argument on a reference no longer relied on by the Patent Office, an article by Glavis, 42 Ind. & Eng. Chem. 2441, Dec. 1950. It is said to show that the addition of viscosity improving agents to lubricants does not give predictable results and that with Watson's tri-aryl phosphates specifically there is a marked difference between the results obtained with the polyacrylic esters of da Fano and the methacrylic esters of Watson, the differences being operability versus inoperability.

What this amounts to is an argument that if one slavishly following the prior art, albeit with a little educated imagination, will sometimes succeed and sometimes fail, then he is always entitled to a patent in case of success. This is not the intention behind 35 U.S.C. § 103. Obviousness does not require absolute predictability. Where, as here,

the knowledge of the art clearly suggests a certain class of compounds, materials actually known by the term "viscosity improving agents," as useful to improve the viscosity index of a certain group of hydraulic fluid lubricants, the mere possibility of failure does not render their successful use "unobvious."

Appellant has not shown the production of anything unexpected here. Though he lauds his own invention as a "surprising discovery," all that his examples purport to show is a satisfactory hydraulic fluid with improved viscosity curve characteristics. No curves are shown and no data are given. Nothing surprising is demonstrated. To this much of an invention the prior art clearly pointed.

The decision of the board is affirmed.

Affirmed.