53 CCPA

**Application of William F. WETTERAU.**
**Patent Appeal No. 7516.**

United States Court of Customs
and Patent Appeals.
Feb. 17, 1966.

Laurence & Laurence, Washington, D. C. (Dean Laurence, Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND,

in relation to the invention in Seem. This issue is not before the court.

Judges, and Judge WILLIAM H. KIRK-PATRICK.*

ALMOND, Judge.

William F. Wetterau appeals from the Patent Office Board of Appeals' decision affirming the rejection of claims 1–4 in his application[1] entitled "4-Aryl-4-Carbalkoxy - 1 - (N - Aryl - Alkanoylaminoalkyl) Piperidines and Their Preparation."

The appealed claims read as follows:

1. A composition of matter selected from the group consisting of a compound and acid-addition and alkyl, alkenyl and aralkyl quaternary-ammonium salts th said compound having the stru l formula

where Y represents polycarbon-lower-alkylene, Ac represents lower-alkanoyl and Ar represents mono-carbocyclic-aryl having six ring-carbon atoms.

2. An acid-addition salt of the compound having in free base form the structural formula

where Y represents polycarbon-lower-alkylene and Ac represents lower-alkanoyl.

3. An acid-addition salt of ethyl 4 - phenyl - 1 - [2 - (N - phenylpropionamido) ethyl] piperidine-4-carboxylate.

4. An acid-addition salt of ethyl 4 - phenyl - 1 - [3 - (N - phenylpropionamido) propyl] piperidine-4-carboxylate.

The references are:

Carabateas—Application, Serial No. 12,909
(Assigned to appellant's assignee)

| | | | |
|---|---|---|---|
| Elpern IV | 2,846,437 | August | 5, 1958 |
| Elpern III | 2,850,500 | September | 2, 1958 |
| Elpern II | 2,880,211 | March | 31, 1959 |
| Elpern I | 2,914,532 | November | 24, 1959 |

The above claims stand rejected as unpatentable on the ground of double patenting over the allowed claims of commonly assigned Carabateas application serial No. 12,909 in view of Elpern I–IV.

This appeal presents a preliminary question which we must consider. The basic reference upon which the appealed claims stand rejected is a copending application, not a patent. While

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of

Section 294(d), Title 28, United States Code.

1. Serial No. 12,929, filed March 7, 1960.

the claims in the Carabateas application relied on by the examiner and the board are allowed *at this time,* no assurance can be given that that status will endure and a patent containing such claims will ultimately issue. If a patent were not to issue on the Carabateas application, the "double patenting" rejection, if here affirmed, would of necessity evaporate for the possibility of two patents would not exist. Grave injury to applicant's rights might occur if the Wetterau application were to go abandoned through no fault of the applicant prior to the issuance of Carabateas, the reference application. It is our understanding, however, that the Patent Office has a policy of not forcing such an abandonment, this policy being announced at least as far back as the case of Ex parte Feister, 1890 C.D. 167. In that case, the examiner attempted to require an applicant to abandon an application in which the claims were rejected on the ground of double patenting as a condition to the issuance of the application containing the claims upon which the "double patenting" rejection was based. Commissioner Mitchell reversed the examiner's position and granted applicant's petition which asked " \* \* \* that the Examiner be instructed that the application referred to by him is no bar to the allowance of the present application." In view of this practice, we believe no harm is done in entertaining an appeal such as this where the reference is not yet a patent. Of necessity, this means that an affirmance of a "double patenting" rejection in a case such as the instant one is only provisional in that it might be obviated by future events. Nonetheless, in view of the long-standing practice of rejecting claims on the allowed claims of copending applications on "double patenting" grounds, and the benefits which such a practice appears to give to the interested parties,[2] we are not persuaded that the practice should be overturned.

We now turn to the merits of the rejection.

The claims in Carabateas upon which the rejection is based read as follows:

2. An acid-addition salt of a compound having the structural formula

where Ac and Z each represent lower-alkanoyl, R represents lower-alkyl, Y represents polycarbon-lower-alkylene and Ar represents monocarbocyclic-aryl having six ring-carbon atoms.

4. An acid-addition salt of 4-(lower - alkanoyloxy) - 4 - phenyl - 1 - [(N - phenyl - N - lower - alkanoylamino) - (polycarbon - lower - alkyl)]-piperidine.

7. An acid-addition salt of 4-phenyl - 1 - [2 - (N - phenyl - propionamido) ethyl]-4-propionoxypiperidine.

8. An acid-addition salt of 4-acetoxy - 4 - phenyl - 1 - [2 - (N - phenyl-acetamido) ethyl] piperidine.

The board's interpretation of the claims in Carabateas and the disclosures of the Elpern patents was stated as follows:

The Elpern patents are directed, like appellant's application and that of Carabateas, to analgesic compounds

---

2. The latter practice appears to benefit both the applicant and the Patent Office, the former because he is made aware of the possible existence of "double patent-

ing" at an early date and has an opportunity, if he so desires, to elect which application to let issue, and the latter because of the hastening of the prosecution.

having a 4-aryl-piperidine structure. The compounds of these applications and the Elpern patents are so closely related structurally that the disclosures of the Elpern patents are particularly informative with respect to the claimed compounds of the Carabateas application and the application here involved. A comparison of the compounds of the Elpern (I) and (II) patents and of the Elpern (III) and (IV) patents shows that the "reverse esters" of the basic substituted 4-aryl-piperidine structure in each instance are highly active analgesics. A person of ordinary skill in this art would regard, therefore, each of the two alternative forms of this structure as being aspects of the same invention. If the analgesic ester of the 4-hydroxy-4-aryl piperidine compound were known, the 4-aryl-piperidine-4-carboxylate would be within the immediate contemplation of the art in structure as well as utility and vice versa. * * *

In the instant case, the approach we believe proper is to determine whether the differences between the inventions claimed in the application at bar and in the copending reference application are such that the subject matter sought to be patented would have been obvious to one of ordinary skill in the art, in view of any prior art additionally relied on. If the issue as stated is answered in the negative, the appealed claims and the reference claims define patentably distinct subject matter and the "double patenting" rejection is unsound.

Controverting the refusal of the appealed claims, appellant urges that the claims on appeal and those of Carabateas are patentably distinct because (1) the compounds recited therein are "different and completely opposed classes of compounds" which should be considered as "unitary [molecular] wholes" that are "not made up of parts which themselves have a unitary existence, as would be the case in the mechanical field," and (2) the Wetterau compounds are about 95 times, while the Carabateas compounds are only about 2.5 times, as potent analgesics as meperidine hydrochloride, used as a comparative standard.

While appellant did argue before the board the patentable distinctness of his claims vis à vis the claims of Carabateas in view of the prior art, it is not clear from the record that the *specific arguments* here advanced by appellant were made below. Nevertheless, the real *issue* below was whether the claims of the instant application would have been obvious to one of ordinary skill in the art in view of Carabateas and the prior art, and this rejection requires a consideration of the subject matter as a whole, which includes a consideration of structural and property differences. Thus, we do not believe that appellant's assertions of the differences set forth above raise new *issues,* and we will consider such assertions in deciding this appeal. In re Osweiler, 346 F.2d 617, 52 CCPA 1427.

A comparison of generic claim 1 of the instant application with the generic claim 2 of Carabateas reveals that the compounds encompassed by the respective claims differ structurally only in the arrangement of the atoms comprising the ester group on the 4-carbon of the piperidine ring (where R is H in Carabateas). In the Wetterau compounds the piperidine ring is substituted in the 4-position by a carbalkoxy group, e. g., $-\overset{\text{O}}{\underset{}{\text{C}}}-OCH_3$ (carbomethoxy), while in the Carabateas compounds the corresponding piperidine substituent is an alkanoyloxy group, e. g., $-O-\overset{\text{O}}{\underset{}{\text{C}}}-CH_3$ (acetoxy).[3] Both appellant's and Carabateas' compounds are stated to be potent analgesics.

---

3. The Patent Office refers to the former arrangement as a "normal" ester and the latter as a "reverse" ester.

Elpern I discloses lower alkyl 4-phenyl-1-(3-phenyl-propyl) piperidine-4-carboxylates having the formula

These esters and their acid-addition salts are stated to be potent analgesics.

Elpern II discloses compounds represented by the formula

Ar O—Ac

(R)n—S

X—Ar′

where Ar is an aryl radical of the benzene or naphthalene series, Ac is a lower carboxylic acyl radical, R is a lower alkyl radical, n is zero or an integer from 1 to 8, X is a divalent aliphatic hydrocarbon radical having from two to six carbon atoms and having its free valence bonds on different carbon atoms, and Ar′ is an aryl radical of the benzene series.

Elpern III discloses compounds represented by the formula

where Ar is an aryl radical of the benzene or naphthalene series, Ac is

a lower carboxylic acyl radical, R is a lower alkyl radical, n is zero or an integer from 1 to 8, X is an alkylene radical having from two to six carbon atoms and having its free valence bonds on different carbon atoms, Z is O or S, and Ar′ is an aryl radical of the benzene series.

Elpern IV discloses compounds in free base form having the formula

$C_6H_5$ COO-(lower alkyl)

C

$CH_2$ $CH_2$

$CH_2$ $CH_2$

N

X—Z—Ar

where X is a lower alkylene radical having at least two carbon atoms and having its free valence bonds on different carbon atoms, Z is O, S, SO, $SO_2$, NH or N (lower alkyl), and Ar is a monocarbocyclic aryl radical having six ring-carbon atoms.

It will be noted that the compounds of Elpern I and Elpern II are "normal" and "reverse" substituted piperidine esters, respectively, and that the generic formula of Elpern I includes compounds which differ from those included in the generic formula of Elpern II only in the arrangement of the atoms of the 4-ester group. The same is true of Elpern III and IV. In view of this fact, and the further fact that all of the compounds are disclosed as being potent analgesics, we believe that given the structural formula of the claimed "reverse" esters of Carabateas, *the structure* of the "normal" esters set forth in the appealed claims would have been obvious to one of ordinary skill in the art.

This brings us to appellant's second contention which is that the claimed

"normal" esters exhibit a degree of analgesic activity which is unexpected in view of the prior art teachings. More specifically, appellant asserts that the Elpern references suggest that a "reverse" ester will be a more potent analgesic than the corresponding "normal" ester, whereas the Wetterau "normal" esters are found to be more potent analgesics than the "reverse" esters of Carabateas. In order to resolve this issue, it is necessary to compare Wetterau's data as to the analgesic activity of his claimed compounds with the data supplied by Carabateas and the prior art. This can be done most conveniently by reference to the table below. All compounds were tested in rats by the same general method,[4] with the postscript "a" indicating subcutaneous administration of the compound and postscript "b" indicating intraperitoneal administration. Unless otherwise indicated by a numeral postscript, the hydrochloride salt of the particular piperidine ester was employed. Column 4 (labeled "Mep.") indicates the number of times more potent the compound tested is than meperidine hydrochloride. Column 5 (labeled "Benzyl") indicates the same thing relative to another standard, 1-benzyl-4-acetoxy-4-phenylpiperidine hydrochloride.

| | A | B | Mep. | Benzyl |
|---|---|---|---|---|
| Wetterau [5] | $COOC_2H_5$ | $(CH_2)_3-NCOC_2H_5$ | 95[a][6] | |
| Carabateas | $OCOCH_3$ | $(CH_2)_2-NCOCH_3$ | 5.5[a] | |
| | $OCOC_2H_5$ | $(CH_2)_2-NCOC_2H_5$ | 2.5[a] | |
| Elpern I | $COOC_2H_5$ | $(CH_2)_3$ | 14[a, b][7] | 56[a, b] |
| Elpern II | $OCOCH_3$ | $(CH_2)_3$ | 200,[a] 75[b] | 50[b] |
| | $OCOCH_3$ | $(CH_2)_4$ | 42[a] | |
| | $OCOC_2H_5$ | $(CH_2)_4$ | 112[a] | |
| | $OCOCH_3$ | $(CH_2)_2$ | 40[a] | |
| | $OCOCH_3$ | $CH=CH-CH_2$ | 350[a] | |
| Elpern III | $OCOCH_3$ | $(CH_2)_3-O$ | 180,[a] 24[b] | 16[b] |
| Elpern IV | $COOC_2H_5$ | $(CH_2)_3-O$ | 12[b] | 48[b] |
| | $COOC_2H_5$ | $(CH_2)-O$ | 6[b] | |
| | $COOC_2H_5$ | $(CH_2)_4-O$ | 3[b] | |
| | $COOC_2H_5$ | $(CH_2)_2-S$ | 5[b] | |
| | $COOC_2H_5$ | $(CH_2)_2-NH$ | Many more [b][8] | |

—◆—

While we have no reason to doubt that appellant's claimed compounds are all potent analgesics, we do not believe that the particular facts of this case warrant

4. The Bass-Vender Brook modification of the D'Amour-Smith method was apparently employed.

5. This compound, the only one for which datum is available, is the subject matter of claim 4.

6. The methane sulfonate salt was tested.

7. Both the hydrochloride and lactate salts were tested.

8. The dihydrochloride salt was tested.

562

the conclusion that the *degree* of analgesic potency exhibited by one compound of the genus establishes the degree of potency of the genus or any other of its members. Accordingly, appellant's arguments for patentability based upon the degree of analgesic activity are considered pertinent only to claim 4, which defines the only compound for which datum has been provided.

It should be noted that no data are available for piperidine esters which differ *only* in the arrangement of the 4-ester group. Thus, generalizations based upon the data set forth in the above table are at best inconclusive. The data tend to indicate that "reverse" esters are more potent analgesics than "normal" esters when the standard is meperidine hydrochloride, but the opposite trend is indicated when the standard is the 1-benzyl compound. One thing is clear, and that is that the prior art suggests that the compound of claim 4 would be an analgesic. While the compound of claim 4 has a significantly greater potency than the tested Carabateas claimed "reverse" esters, the above table reveals that the former compound differs from the latter compounds by at least one methylene group, in one instance the difference being in the "A" substituent. Conceivably, these methylene groups have a significant influence on analgesic potency.

■ Thus, it cannot be determined with any degree of certainty to what the increased potency is attributable. We are unable to find "clear and convincing evidence," as required by this court in In re Lohr, 317 F.2d 388, 50 CCPA 1274, that appellant's compounds possess unexpected activity compared to the *closest* Carabateas reference compound. Because of appellant's lack of proof, the decision of the board is affirmed.

Affirmed.

SMITH, J., concurs in the result.