56 CCPA

**Application of Ralph E. MIEGEL and John J. Verbanc.**

**Patent Appeal No. 8011.**

United States Court of Customs and Patent Appeals.

Dec. 5, 1968.

Rich, J., dissented.

William B. Cridlin, Jr., Wilmington, Del. (James T. Corle, Wilmington, Del., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claim 3, the only claim in appellants' application.[1]

Appellants' invention is a curable composition of butadiene-styrene copolymer and bis (2,6-dimethylmorpholinothiocarbonyl) monosulfide. The monosulfide acts as a vulcanization accelerator for the butadiene-styrene copolymer elastomer and is said to afford fast and effective cures of the butadiene-styrene rubber while exhibiting an exceptional degree of processing safety.

The claim on appeal reads as follows:

3. A composition exhibiting fast curing and improved processing safety comprising a butadiene-styrene copolymer and from about 0.4 to about 1.5 parts by weight of bis (2,6-dimethylmorpholinothiocarbonyl) monosulfide per one hundred parts of said copolymer.

The references are:

| | | |
|---|---|---|
| Payman et al. (Payman) | 1,859,527 | May 24, 1932 |
| Naunton et al. (Naunton) | 1,867,982 | July 19, 1932 |

Whitby, G.S., Synthetic Rubber, John Wiley and Sons, Inc., New York 1954, p. 392 (Whitby)

---

1. Serial No. 110,636, filed May 17, 1961, for "Process and Products."

Naunton discloses that morpholine thiuram monosulfides and polysulfides, as well as homologs and derivatives of morpholine, are "safe" super-accelerators for rubber. The patentee states that the homologs and derivatives of morpholine as well as morpholine itself may be prepared in the manner described in the reference patent to Payman.

Payman discloses a method for the manufacture of morpholine, its homologs and derivatives and specifically discloses the preparation of 2,6-dimethylmorpholine. Payman further states that in the reference patent to Naunton there are disclosed processes for converting these morpholine compounds into other compounds which are useful in processes of vulcanizing rubber.

Whitby states that thiuram monosulfides and thiuram polysulfides are very good accelerators for GR-S[2] and can be used in GR-S with less danger of scorching than in natural rubber.

The issue here is obviousness under 35 U.S.C. § 103.

The examiner rejected the claim as unpatentable over Naunton in view of Payman and Whitby. Noting that Naunton, with specific reference to Payman, teaches that homologs and derivatives of morpholine thiuram monosulfides "are accelerators for rubber which do not exhibit the tendency to induce scorching as well as having the capacity to activate a rapid cure" and that Payman specifically discloses 2,6-dimethylmorpholine as a precursor for the thiuram monosulfides, the examiner considered it obvious to convert the precursor to the thiuram monosulfide of the claim "using the same well-known procedures disclosed both by the primary reference and by appellants, to produce a compound which is used to impart fast curing and improved processing safety." Stating that the two reference patents "are directed towards the preparation of vulcanization accelerators" for natural rubber, the examiner further considered it obvious to employ the claimed monosulfide as an accelerator for butadiene-styrene copolymer (GR-S rubber) in view of the teaching by Whitby that the general class of thiuram monosulfides are good accelerators having less danger of scorching in GR-S rubber than in natural rubber.

The board, in affirming the rejection, added that since Payman "describes no other specific homolog of morpholine than 2,6-dimethylmorpholine, it would appear that this intermediate was offered as the preferred, or prototype, intermediate for the accelerator."

We agree with the examiner and the board that it would be obvious to convert the 2,6-dimethylmorpholine precursor of Payman to the monosulfide of the claim and employ the monosulfide as an accelerator in composition with butadiene-styrene copolymer in view of Naunton's explicit reference to Payman as a source of morpholine compounds for vulcanization accelerators and Whitby's clear teaching that thiuram monosulfides are good accelerators for butadiene-styrene copolymer. It is noted that the appellants urge no patentable distinction or critical significance in the claimed proportions.

Appellants argue, however, that their invention is patentable because of unexpectedly improved curing results obtained by their composition. In support of this argument, appellants direct our attention to two Rule 132 affidavits in

2. The Condensed Chemical Dictionary (Reinhold Publishing Corp., New York, Sixth Edition, 1961) defines "GR–S" as follows:

GR–S. Abbreviation for government rubber-styrene. * * * Produced by emulsion polymerization of 75 parts butadiene and 25 parts styrene, and also referred to as Buna-S. The more accepted designation now is SBR (styrene-butadiene rubber).

That GR–S refers to butadiene-styrene copolymer is not in dispute here.

the record. While the examiner did not disagree with the affidavits' showing, he felt that relative processing safety of the compared accelerators would be expected and any differences to be differences of degree only. The determination of the best accelerator for one's use was considered to be a matter of routine experimentation. The board found the comparative tests to "provide uncertain evidence of the superiority of appellants' accelerator as compared with even the arbitrarily selected homologs of the prior art." The appellants' attempt to show that other homologs have a lesser safety was said to appear to "create an artificial problem of selection." The combined affidavits of Dr. Gruber show that appellants' accelerator has a greater scorching time, corresponding to an increase in processing "safety," compared to five other structurally similar accelerators in combination with a *specific* butadiene-styrene copolymer.

We agree with the board and solicitor that the comparative tests, limited to a particular copolymer of butadiene-styrene, are insufficient to establish similar superiority for the accelerator with all copolymers of butadiene-styrene within the scope of the claim and are inadequate to overcome the strong suggestion of obviousness inferred from the references.

■■ Moreover, we agree with the examiner that, inasmuch as the art teaches that the morpholine thiuram monosulfides and disulfides are "safe" accelerators for vulcanizing rubber and since it would not be unreasonable to expect that individual accelerators would tend to vary in this effect with the same or different rubbers, "merely testing to determine the relative degrees of processing safety and finding a particular thiuram sulfide exhibiting a higher or lower degree would be expected." Obviousness does not require absolute predictability. In re Crounse, 363 F.2d 881, 53 CCPA 1390; In re Sebek, 347 F.2d 632, 52 CCPA 1442; In re Moreton, 288 F.2d 940, 48 CCPA 928. We are unable to find "clear and convincing evidence," as required by this court in In re Lohr, 317 F.2d 388, 50 CCPA 1274, that appellants' accelerator possesses unexpected processing safety as compared to the other thiuram monosulfides. In re Wetterau, 356 F.2d 556, 53 CCPA 916.

■ Appellants urge, also, that the claimed composition is patentable because the reference patents teach the preparation of "hundreds of individual compounds" while not mentioning appellants' specific accelerator. However, we find that the accelerator of the claim is clearly suggested to one of ordinary skill in the art by the combined teachings of the patents since, as urged by the solicitor, the morpholine homolog, 2,6-dimethylmorpholine, is one of only three precursors specifically described by Payman for use in forming the Naunton accelerators, of which are disclosed substantially only three categories including the morpholine thiuram monosulfides. The use of the thiuram monosulfide thus obtained as an accelerator for butadiene-styrene would not be unobvious in view of the teaching of Whitby that thiuram sulfides are even more effective with the GR-S rubbers (butadiene-styrene copolymers) than with natural rubber in preventing scorching.

We agree with the conclusion of the board that the claim on appeal is obvious in view of the cited references.

The decision of the board is affirmed.

Affirmed.

SMITH, Judge, participated in the hearing of this case but died before a decision was reached.

RICH, Judge (dissenting).

That bis (2,6-dimethylmorpholinothiocarbonyl) monosulfide, appellants' vulcanization accelerator, is *not* specifically disclosed by the references cannot be disputed. That the references, taken in combination, do fairly teach that

382

thiuram sulfides [1] (monosulfides, disulfides, and polysulfides) are in general good vulcanization accelerators for GR-S (butadiene-styrene copolymer) and can be used in GR-S with less danger of "scorching" [2] than in natural rubber, also cannot be disputed.

However, it is urged by appellants that they have demonstrated that their particular vulcanization accelerator has an *unexpectedly* high degree of processing safety. Specifically, appellants compared the processing safety of their accelerator to that of four other closely related thiuram sulfides, *including the most closely related compound specifically disclosed in Naunton*. Five compounded butadiene-styrene copolymer [3] compositions were prepared. The compositions were identical except for the thiuram sulfide included. "Mooney scorch data" were obtained in terms of "minutes to 10-point rise." Appellants have indicated that this is "a standard test in determining the 'safety' of a composition using a particular curing agent," and this has not been disputed.

The values obtained are shown in Table I.

Table I

| Thiuram Sulfide | Minutes to 10-Point Rise |
|---|---|
| R–CS–S–CS–R* where R is: | |
| 1. 2,6-dimethylmorpholino | 36 |
| 2. morpholino | 20 |
| 3. 2,5-dimethylmorpholino | 22 |
| 4. 3,5-dimethylmorpholino | 18 |
| R–CS–S$_2$–CS–R** where R is: | |
| 5. 2,6-dimethylmorpholino | 14 |

\* thiuram monosulfides
\*\* thiuram disulfides

To compare the rapidity and quality of cure obtained with appellants' accelerator and that obtained with compounds 2, 3 and 4 above, compounded butadiene-

1. That is, compounds containing the grouping

where "x" is an integer of one or more.

2. This term is explained in the following paragraph from appellants' specification:
   Among the technically valuable attributes of an accelerator for the vulcanization of natural and synthetic rubber are (a) *delayed action* and (b) the capacity to activate a rapid, efficient, and stable curing reaction leading to a high quality vulcanizate. The former attribute is essential to the *avoidance of premature vulcanization or scorching* of rubber stocks during compounding, shaping, and molding operations. The latter is necessary in order to minimize the time required for the curing step of the overall manufacturing process and to produce the highest possible quality in the finished product. [Emphasis added.]

3. The copolymer employed was identified as "SBR–1500 (previously known as GR–S–1500)" which is said to contain "23.5% bound styrene." Appellants' specification states that "The most commonly used butadiene-styrene copolymers contain about 76.5 percent of butadiene and about 23.5 percent styrene, although other butadiene-styrene copolymers may contain up to about 45 percent styrene."

styrene compositions prepared in the same manner were "press-cured" and the tensile properties of each sample were measured by an ASTM method. Table II shows the data obtained in this test.

## Table II

| | Time of Cure Min. | Modulus at 300% elongation p.s.i. | Tensile Strength at Break p.s.i. | Elongation at Break percent |
|---|---|---|---|---|
| **Accelerator** | | | | |
| **R–CS–S–CS–R where R is:** | | | | |
| 1. 2,6-dimethyl-morpholino | 10 | 1300 | 3300 | 580 |
| | 20 | 1350 | 3350 | 580 |
| | 50 | 1400 | 3250 | 590 |
| 2. morpholino | 10 | 1500 | 3100 | 520 |
| | 20 | 1600 | 3100 | 500 |
| | 50 | 1650 | 3050 | 460 |
| 3. 2,5-dimethyl-morpholino | 10 | 450 | 900 | 710 |
| | 20 | 600 | 1450 | 750 |
| | 50 | 850 | 1950 | 620 |
| 4. 3,5-dimethyl-morpholino | 10 | 1000 | 2850 | 640 |
| | 20 | 1150 | 3100 | 600 |
| | 50 | 1100 | 3150 | 600 |

Appellants' specification asserts that the above data demonstrates the following:

> From Table II it can be seen that the 2,6-dimethyl and 3,5-dimethyl isomers and the morpholino homolog are relatively equivalent in rapidity and quality of cure but that the 2,5-dimethyl isomer gives a slow and unsatisfactory cure. However, as shown in Table I, only the 2,6-dimethyl isomer combines fast action and satisfactory cure with an exceptionally high degree of processing safety.

Note should be taken that the morpholino thiuram monosulfide (compound 2) is the *only* thiuram *mono*sulfide specifically disclosed in Naunton, that compounds 3 and 4 are position isomers of appellants' accelerator, and that compound 5 is the 2,6-dimethyl analog of the *only* thiuram *di*sulfide specifically disclosed in Naunton (morpholine thiuram disulfide). It will be observed also that, compared to compounds 2 through 5, appellants' accelerator provides 80%, 60%, 100% and 150% higher processing safety, respectively.

The examiner, in his Answer, treated appellants' showings as follows:

> While the Examiner does not disagree with the Mooney scorch data comparisons, per se, the relative processing safety of the monosulfides and the disulfide would be expected and *any differences—one of degree only.* It is evident from the applied references, of the obvious use of the thiuram sulfide compounds and it would be a matter of *routine experimentation* to determine the best accelerator for one's use. Since it is quite clear that the claimed bis (2,6-dimethylmorpholinothiocarbonyl) monosulfide would be expected to effect the desired results in a GR-S composition, as taught by Naunton et al. in view of Payman et al. and Whitby, *merely testing* to determine the relative degrees of processing safety and finding a particular thiuram sulfide exhibiting

a higher or lower degree would be expected. It is well settled that *obviousness does not require [absolute] predictability;* In re Moreton 1961 C.D. 330 [48 CCPA 928, 288 F.2d 940, 129 USPQ 288]. [Emphasis added.]

First, in In re Krazinski, 347 F.2d 656, 52 CCPA 1447 (1965), this court, in supporting a unanimous decision, said:

* * * the rejection is based upon section 103, which says nothing at all about differences in degree and differences in kind, but instead clearly requires us, in determining whether a patentable invention has been made, to consider *the* differences, *whatever their nature,* between the subject matter sought to be patented and the prior art and to determine if the subject matter *as a whole* would have been obvious to one of ordinary skill in the art at the time the invention was made. [Emphasis quoted.]

Likewise, § 103 says nothing about "routine experimentation" or "mere testing"; it does, however, say something that apparently needs repeating, namely:

Patentability *shall not* be negatived by the manner in which the invention was made. [Emphasis added.]

Second, *Moreton* does not, on its facts, support the rejection here. There the art taught that polymerized methacrylic acid esters in which the ester portion contains from 2 to 15 carbon atoms are useful as "viscosity improving agents" in hydraulic fluids; applicant was claiming polymerized decyl methacrylate (10 carbon atoms in the ester portion) in combination with a known hydraulic fluid. Moreton did not purport to show that the polymerized methacrylic acid ester he used was, for his purpose, unexpectedly superior to any of the other polymerized methacrylic acid esters which the art generically disclosed. Instead, he merely argued that certain prior art, not relied on by the examiner, demonstrated that combinations of known viscosity improving agents and known

lubricants and hydraulic fluids had *sometimes* performed unsatisfactorily. It was in this context that we said in Moreton, 288 F.2d at 943, at 48 CCPA 933:

Obviousness does not require absolute predictability. Where, as here, the knowledge of the art clearly suggests a certain class of compounds, materials actually known by the term "viscosity improving agents," as useful to improve the viscosity index of a certain group of hydraulic fluid lubricants, the mere possibility of failure does not render their successful use "unobvious."

With respect to appellants' comparative tests, the board had this to say:

* * * [they] provide *uncertain evidence of the superiority* of appellants' accelerator as compared with even the arbitrarily selected homologs of the prior art. The experiments appear to deal with a single butadiene-styrene copolymer, one having 23.5% bound styrene, and have not been shown to have a general significance as applied to the butadiene-styrene copolymers as a group. [Emphasis added.]

Although the board attacks appellants' choice of thiuram sulfides for comparative tests, no hint is given as to why the choice was thought to be improper or what compounds the board would have had appellants employ. The board appears to have overlooked the fact that appellants have compared their accelerator with the *only* thiuram *mono*sulfide specifically disclosed in the cited art and with a thiuram *di*sulfide *more closely related* to their own accelerator than the *only di*sulfide specifically disclosed in the cited art. It should also be noted that there are only four non-equivalent ways in which two methyl groups can be introduced onto the four carbon atoms of morpholine, viz., 2,3-, 2,5-, 2,6-, and 3,5- (3,6- and 5,6- being the same as 2,5- and 2,3-, respectively), and that appellants have established that their isomer is superior to two of the remaining three isomers. It would seem, then, that having taken one step in each di-

rection from the accelerator employed in their composition, appellants have done all that can fairly be asked of them in selecting accelerator compounds for comparison.

With respect to the board's second criticism of appellants' experiments, namely, the specific rubber selected for testing, I find no basis of record for speculating that the superiority which has been shown as to the copolymer used would not have general significance to butadiene-styrene copolymers as a group. The examiner apparently saw nothing wrong with this aspect of the experiments or, for that matter, appellants' choice of compounds for comparison; in fact, he said, "the Examiner *does not* disagree with the * * * comparisons, per se * * *." (Emphasis added.)

The majority opinion dismisses appellants' showings stating:

> We agree with the board and solicitor that the comparative tests, limited to a particular copolymer of butadiene-styrene, are insufficient to establish similar superiority for the accelerator with all copolymers of butadiene-styrene within the scope of the claim and are inadequate to overcome the *strong* suggestion of obviousness *inferred* from the references.

> Moreover, we agree with the examiner that, inasmuch as the art teaches that the morpholine thiuram monosulfides and disulfides are "safe" accelerators for vulcanizing rubber and since *it would not be unreasonable to expect that individual accelerators would tend to vary in this effect* with the same or different rubbers, *"merely testing* to determine the relative determine the relative degrees of processing safety *and finding* a particular thiuram sulfide exhibiting a higher or lower degree *would be expected."* Obviousness does not require absolute predictability. * * * We are unable to find "clear and convincing evidence," * * * that appellants' accelerator possesses unexpected processing safety as compared to the other thiuram monosulfides. [Emphasis added.]

Boiled down to its bare bones, the majority's position side-steps a consideration of appellants' invention as a whole by employing, as did the examiner, the "mere testing" cliché, thereby avoiding even an acknowledgment of the magnitude of the superiority which appellants have shown. While *minor* variations in a given property *are to be expected* as one goes through a homologous series or compares compounds very closely related structurally, for example the type variations shown by the data for compounds 2, 3, and 4 in Table I above, I cannot agree that the 60% to 150% differences which appellants have shown are either minor or suggested by the art. Certainly they are as unobvious as they are unpredictable.

The observation of the board and the majority that only one copolymer was used in appellants' experiments appears to be nothing more than that, an observation. The examiner did not urge that the showings were defective in this respect, and, as stated above, there is no basis in the record for speculating that, if appellants' experiments were repeated using a butadiene-styrene copolymer containing a different percentage of bound styrene, the superiority of appellants' accelerator would be demonstrated any less dramatically.

Thus, although the examiner established a prima facie case of obviousness by citing Naunton, Payman, and Whitby, appellants have satisfactorily rebutted that case by demonstrating that their vulcanization accelerator possesses a degree of processing safety so significantly superior to that possessed by the other closely related compounds specifically and/or generically disclosed by the prior art that that superiority exceeds that which might reasonably be expected by persons of ordinary skill in this art. Appellants have, therefore, made a patentable advance in the art. Considering appellants' invention *as a whole*, I find it to be non-obvious and would reverse.