57 CCPA

**Application of Ellen L. MOCHEL.**

**Patent Appeal No. 8291.**

United States Court of Customs and Patent Appeals.

April 16, 1970.

Clinton S. Janes, Jr., Corning, N. Y., attorney of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Leroy B. Randall and Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–7 in appellant's application entitled "Method of Glass Treatment and Product."[1] No claims have been allowed.

The invention relates to the strengthening of sodium aluminosilicate (predominantly $Na_2 O–Al_2 O_3 –SiO_2$) glasses which contain at least ten percent alumina ($Al_2 O_3$) by treatment with a source of hydrogen ions in a sulfur oxide environment at a temperature above the strain point, but below the deformation point, of the glass. This results in a glass surface having a higher viscosity and lower coefficient of thermal expan-

1. Serial No. 537,734 filed March 28, 1966 as a divisional application of serial No. 181,887 filed March 23, 1962.

sion than that of the parent glass comprising the interior portion of the article so that upon cooling the surface contracts less than the inner portion of the glass thereby creating a surface layer of compressive stresses within the article.

Acknowledging that the above has been known to the glass art as a treatment for soda lime glass (predominantly $Na_2 O-CaO-SiO_2$), appellant states that the crux of her invention is the discovery that sodium silicate glasses having a relatively high alumina ($Al_2 O_3$) content exhibit as much as a three or four-fold improvement in "abraded strength," i. e. strength displayed after surface abrasion.

Illustrative are claims 1 and 5:

1. A method for strengthening a soda aluminosilicate glass article which comprises forming a glass article from a soda aluminosilicate glass composition consisting essentially, by weight on the oxide basis, of about 10–25% $Na_2 O$, 10–25% $Al_2 O_3$, the total of said $Na_2 O$ and $Al_2 O_3$ together with $SiO_2$ constituting at least 80% by weight of the glass composition, contacting said glass article at a temperature between the strain and deformation points of the glass with a source of hydrogen ions in a sulfur oxide environment to remove sodium ions from the glass surface in exchange for hydrogen ions and thereby produce a surface layer of compressive stress on the glass article, and then cooling the article to room temperature.

5. A glass article exhibiting high strength after being subjected to surface abrasion, said article comprising a soda aluminosilicate glass containing, by weight on the oxide basis, about 10–25% $Na_2 O$, 10–25% $Al_2 O_3$, the total of the $Na_2 O$ and $Al_2 O_3$ together with $SiO_2$ constituting at least 80% by weight of the glass composition and having a surface compressive stress layer created by ion exchange replacement of sodium ions by hydrogen ions, whereby the concentration of said hydrogen ions is greater in said surface layer than in the interior of the article and the concentration of said sodium ions is greater in the interior than in said surface layer.

Claims 2–4 depend from claim 1, claim 2 being drawn to the use of an atmosphere of moisture and a catalyzed mixture of sulfur dioxide and hydrogen, while claim 3 states the depth of the surface layer of compressive stress being produced to be at least five microns, and claim 4 recites the soda and alumina content of the starting glass as being 15–16 percent and 16–22 percent by weight, respectively. Claims 6 and 7 depend from claim 5 and recite in product terms the limitations of claims 3 and 4.

The references relied upon are:

| | | |
|---|---|---|
| Weyl et al. (Weyl) | 2,455,719 | December 7, 1948 |
| Hood et al. (Hood) | 2,779,136 | January 29, 1957 |
| LeClerc et al. | | |
| (LeClerc) | 3,116,991 | January 7, 1964 |

Douglas and Isard (Douglas), "Transactions of the Society of Glass Technology," Vol. 33, pages 289–335 (1949).

———◆———

Weyl discloses dealkalization of the surface of soda lime glass containing some alumina to improve properties of chemical resistivity and strength by coating the surface with metakaolin and heating the glass. Alkali ions migrate from the glass surface while hydrogen ions in the clay replace them. The process is described as being carried out below the strain point to avoid surface deformation, the patentee stating, however, that when surface condition is of

secondary importance, temperatures above the strain point may be used.

Hood discloses a method of strengthening glass wherein lithium ions from an external source are exchanged with sodium and/or potassium ions present within the surface of the glass at temperatures between the strain and softening points of the glass. Surprisingly high tensile strengths are allegedly attained in silicate glasses containing 7.5% to 25% alumina ($Al_2O_3$) due to formation of beta-spodumene; however, $TiO_2$ is also necessary to prevent spalling. An example showing an increase of 330% in abraded tensile strength is given.

LeClerc discloses the dealkalization of glass by bringing the glass into contact with hot sulfuric acid or hot acid sulphate and causing the hydrogen ions thereof to be exchanged with the alkaline ions of the glass. An example using a glass containing 5.80% alumina ($Al_2O_3$) is given. The patent states also that the glass obtained can be subjected to heat treatment to improve its mechanical properties.

Douglas describes the treatment of soda glass containing 2.6 percent alumina ($Al_2O_3$) in a sulfur dioxide atmosphere containing hydrogen ions resulting in alkalihydrogen ion exchange. Sulfur dioxide treatment above 500° is discussed as improving the mechanical strength of glass.

The examiner rejected product claims 5–7 as failing to comply with 35 U.S.C. § 112 in that they did not particularly point out the subject matter of the invention. Specifically he felt that the term "created by ion exchange replacement" was a method recitation which rendered the claims vague and indefinite. The board agreed with the examiner's position and added that since the process limitations in product claims 5–7 omitted the essential detail of temperature range, the claims were indefinite.

The examiner also rejected claims 1–7 as unpatentable over Hood and Weyl "considered with" LeClerc and, two references not discussed here, Kamita or Murgatroyd under 35 U.S.C. § 103. Of these references, the board considered LeClerc and Weyl most pertinent. Adding thereto the Douglas reference cited in appellant's specification, the board affirmed the examiner's rejection, stating:

> The replacement of sodium ions in glass by hydrogen ions is described in LeClerc et al. for a glass containing 5.80% $Al_2O_3$ * * *, and in Weyl et al. above the strain point for glasses containing sufficient $Al_2O_3$ to increase the melting and firing temperatures * * *. The reference acknowledged on page 4 of appellant's specification, Douglas et al., * * * shows that the surface of a soda glass containing 2.6% $Al_2O_3$ will have its sodium ions replaced by hydrogen ions when exposed to an atmosphere of wet $SO_2$ at temperatures up to 1000°C. With this state of the art before him, a worker of ordinary skill in the glass art would, in our opinion, find it obvious to use the acid leaching expedient of LeClerc et al. and Douglas et al. in lieu of the metakaolin leaching agent of Weyl et al. The leaching process thus derived would be expected to be satisfactory for soda glasses containing 10% $Al_2O_3$, because each of the three above described references contemplates the presence of $Al_2O_3$ in the glass.

No request for reconsideration was made.

Appellant contends that the board committed error in rejecting claims 1–7, particularly in holding that the ion exchange of hydrogen ions for sodium ions in a sulfur oxide-containing atmosphere "would be expected to be satisfactory for soda glasses containing 10% $Al_2O_3$, because each of the three above-described references contemplates the presence of $Al_2O_3$ in the glass." This reasoning, appellant alleges, overlooks the crux of the invention, namely, the discovery of the synergistic effect upon the development of greatly increased abraded strength which $Al_2O_3$ plays. The es-

sence of appellant's argument is stated in her brief:

Even conceding that $Na_2 O–Al_2 O_3 –SiO_2$ glasses containing 10–25% $Al_2 O_3$ were known in the art and hydrogen ion exchange in the sulfur oxide-containing atmosphere with commercial soda lime glass was also known in the art, it is earnestly contended that this knowledge would not render obvious the synergistic effect which 10–25% $Al_2 O_3$ has upon the abraded strength that can be developed through ion exchange. Certainly none of the three references alone or in combination with each other even hints at this property of $Al_2 O_3$ and it is firmly believed that no inference can be fairly drawn from the references which would suggest this faculty of 10–25% $Al_2 O_3$. The effect of $Al_2 O_3$ on abraded strength invokes a situation that can be likened to $2 + 2 = 5$.

For factual support for her argument, appellant points to an example in her specification wherein a commercial soda-lime glass containing one percent alumina and two sodium aluminosilicate glasses containing 18 percent alumina are subjected to essentially the same ion exchange treatment, abraded and then subjected to modulus of rupture tests. The table accompanying the example shows a significant increase in strength for the high alumina glasses compared to the soda-lime glass.

The solicitor responds by contending that improved strength, after abrasion, has no effect on whether the process used to produce this product is unobvious. In his opinion, the lower limit of alumina (10 percent) in the claims is an arbitrary one since the specification indicates only that the rate of reaction of the process is affected by the alumina content. Moreover, it is pointed out, the specification characterized an alkali aluminosilicate glass as one containing at least five percent alumina. With regard to the product claims, the solicitor argues that the comparison shown in appellant's example is inadequate since it compares a soda-lime glass containing

one percent alumina whereas the references disclose the use of glasses containing 2.6% and 5.80% alumina. It is alleged that the specification indicates that five percent alumina was satisfactory for appellant's purpose and that percentages lower than 10% are operative.

At oral argument, the solicitor referred to Hood and the examiner's reliance thereon in support of the view that $Al_2 O_3$ possesses the ability to hold exchanged ions, thus negating reliance upon that feature for patentability. The reference suggests, the solicitor contends, that substantially improved abraded strength is obtained when using a relatively high alumina ($Al_2 O_3$) content glass.

We agree with the board that the prior art references, considered as a whole, suggest the claimed invention so as to render it obvious to one of ordinary skill in the art. Admittedly, the references do not treat glass containing at least 10 percent alumina; however, they do not suggest that such cannot be done and at least the reasonable inference to one of ordinary skill would be to apply this irrespective of the alumina level.

We are not persuaded by appellant's contention that a relatively high alumina content results in a synergistic effect upon abraded strength that is wholly unexpected and unpredicatable, for several reasons. While superior results were shown for the single comparison made, the record is devoid of clear and convincing evidence that such results were unexpected by the art. Hood obtained superior results due to the presence of high percentages of alumina. Moreover, the single comparison is with a soda-lime glass containing one percent alumina, yet the references disclose similar treatment of glasses containing up to 5.8% alumina, a level which very likely would affect the strength and produce results different from that of the one percent alumina glass compared. This court has often said that obviousness does not require absolute predictability. In re Miegel, 404 F.2d 378, 56 CCPA 761

(1968); In re Sebek, 347 F.2d 632, 52 CCPA 1442 (1965); In re Moreton, 288 F.2d 940, 48 CCPA 928 (1961).

We are unable to find, based on the facts of record, that the board erred in sustaining the examiner's rejection of claims 1–7 based on prior art and, accordingly, the board's decision is *affirmed*. The view we have taken renders it unnecessary to consider the additional rejection of claims 5–7 under 35 U.S.C. § 112.

Affirmed.